**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
------------------------------------------------------------X

JAMES SWEENY on behalf of himself
and all others similarly situated,

           Plaintiff,

  v.

FORCE FACTOR LLC,
           Defendant.

------------------------------------------------------------X

Case No.:

**COMPLAINT**

Plaintiff James Sweeny, on behalf of himself and all others similarly situated ("Plaintiff"), by and through his undersigned counsel, Denlea & Carton LLP, states for his Complaint against Force Factor LLC ("Force Factor" or "Defendant"), as follows:

**PRELIMINARY STATEMENT**



1.    This action seeks to redress the false, misleading, and deceptive advertising and packaging claims that Force Factor has made in connection with the sale of its purportedly beetroot infused and nitrate rich soft chews under the brand name *Total Beets*.

1

2. Claiming to be a "safe source of nitrates," Force Factor markets *Total Beets* soft chews as a product that is "packed with antioxidants" and supports "heart-healthy energy":



3. Force Factor advertises that consuming just two chews a day is sufficient to enable consumers to experience a "quick boost of heart-healthy energy":



4. Force Factor then seeks to buttress its fanciful claims concerning the efficacy of the soft chews in enhancing "energy" by falsely claiming that it is "backed by science," and offering a series of pseudo-scientific and opaque contentions that the "[p]atented combination of beetroot nitrates and amino acids" contained in the chewable candies acts to "improve oxygen

delivery" and that the "Beetroot Extract" in the chews is a "[p]owerful superfood delivering the health benefits of beets":



5.  However, Force Factor's advertising of its *Total Beets* chews is materially deceptive and false because laboratory testing unequivocally demonstrates that (a) the "beetroot extract" it touts is nothing more than a synthetic reproduction containing little to no real beetroot at all and, further, (b) the level of nitrates in the synthetic concoction are nowhere near sufficient to produce any beneficial effects when consumed.

6.  Indeed, in a related litigation currently pending before this Court[1] where Force Factor has been sued for trade dress infringement and false advertising (based, in large part, upon the lack of efficacy of its *Total Beets* line of products), evidence has been produced and publicly filed indicating that the soft chews contain a mere 4.33 milligrams of nitrate per chew (8.66 milligrams per serving), a woeful deficiency in the prime ingredient purportedly responsible for

---

[1].   *Windmill Health Products, LLC v. Force Factor LLC, et al.*, 21-CV-18114 (MCA) (JBC) (D.N.J. 2021), ECF Docket No.: 40.

most of the health "benefits" that Force Factor misleadingly deceives its customers into believing they will obtain by purchasing and consuming its product.

7. In the related action, the miniscule concentration of nitrates[2] in Force Factor's beet based supplements is alleged to be part and parcel of its false advertising campaign, which deliberately targets consumers by grossly misrepresenting the efficacy of the *Total Beets* line of products. However, the related action does not request any relief on behalf of aggrieved and mislead consumers, thus necessitating the instant action.

8. According to a 2014 study[3] published by the National Institutes of Health ("NIH"), a dietary supplement offering less than approximately **700 milligrams** of nitrate per serving lacks efficacy and cannot, as a scientific matter, activate or support a nitric oxide response in the human body.

9. Worse still, the NIH threshold for nitrate concentration is one that Force Factor has itself endorsed in a legal filing before this Court as an operative benchmark for establishing the efficacy of beet infused supplements.[4]

10. Given that Force Factor has steadfastly propounded a scientific standard of 700 milligrams per serving as the basis for supplement efficacy, one would expect that Force Factor's own *Total Beets* chews would contain enough nitrate to comfortably surpass that threshold. They do not.

11. In fact, Force Factor's synthetic soft chews fall woefully short of the 700 milligram per serving threshold standard for efficacy by several orders of magnitude. Simply put, Force Factor is effectively peddling second rate Starburst candies with half the flavor and at more than

---

[2]. *Id.* at ¶ 33.
[3]. *See* Clements, W., *Nitrate Ingestion: A Review of the Health and Physical Performance Effects* (Nov. 18 2014), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4245587/
[4]. *Windmill Health Products, LLC v. Force Factor LLC, et al.*, 21-CV-18114 (MCA) (JBC) (D.N.J. 2021), ECF Docket No.: 12, Answer and Countercl., at ¶ 26.

four times the price under the guise of a "healthy snack." By doing so, Force Factor deceives a health conscious public while raking in millions of dollars.

12. By this action, Plaintiff seeks to redress Force Factor's unfair and deceptive marketing campaign through which it sells its *Total Beets* product and to obtain the financial recompense to which Plaintiff and his fellow class members are entitled.

## THE PARTIES

13. Plaintiff James Sweeny is an individual who resides in Chestertown, New York.

14. Defendant Force Factor LLC is a Delaware limited liability company having its principal place of business at 280 Sumner Street, Lobby Boston, MA 02210. Force Factor LLC is the owner and marketer of several dietary supplement brands, including the *Total Beets* line of products.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because (1) the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, and (2) the named Plaintiff and Defendant are citizens of different states. 28 U.S.C. § 1332(d)(2)(A).

16. The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as the parties are diverse and the amount in controversy exceeds the requisite threshold.

17. This Court may exercise jurisdiction over Defendant because Defendant has sufficient minimum contacts in New Jersey and purposely avails itself of the markets within New Jersey through the promotion, sale, marketing, and distribution of its products, thus rendering jurisdiction by this Court proper and necessary.

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because Defendant has marketed and sold the products at issue in this action within this judicial district and has done business within this judicial district.

19. The instant action is related to an action presently pending before this Court captioned *Windmill Health Products, LLC v. Force Factor LLC, et al.*, 21-CV-18114 (MCA) (JBC) (D.N.J. 2021) as it grows out of the same transaction (i.e. Force Factor's false advertising and sale of its *Total Beets* line of products in the State of New Jersey) and involves a common nucleus of operative facts and legal issues.

## FACTUAL BACKGROUND

**I.     Beet Based Supplement Manufacturers Routinely Misrepresent that their Products Confer Cardiovascular Benefits Because Consumers are Willing to Pay a Premium for Products that are Marketed as Heart Healthy and a Source of Nitrates**

20. Health conscious consumers seeking to improve their cardiovascular well-being are particularly susceptible to deceitful advertising as supplement manufacturers look to exploit the lucrative wave of the latest trend in dietary health to hit the market – in this case, beetroots (colloquially referred to as "beets").

21. Belonging to the taxonomical subfamily of *Betoideae*, the common beet, or *Beta vulgaris*, has long been recognized as an important constituent of a healthy diet and a source of nutritional bioactive compounds.[5] Chief among these compounds is $NO_3$, or Nitrate. Nitrate, a vasodilator[6] that increases blood flow and therefore aids in oxygen delivery to the cells, has long been studied for its potential benefits to cardiovascular and cerebrovascular health.[7]

---

[5].https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7600128/
[6].https://www.ncbi.nlm.nih.gov/books/NBK545149/#:~:text=Nitrates%20are%20useful%20in%20the,angina%20and%20other%20cardiovascular%20diseases.
[7].https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5707643/

22. The problem, however, arises from the fact that the regular consumption of natural beetroot products (juices, chips, slices, etc.) does not permit the human body to absorb a sufficient concentration of nitrate in order to confer cardioprotective effects.[8]

23. Indeed, the volume of beetroot that would need to be consumed by the average person to reach efficacious nitrate thresholds is simply impractical, and would come with the risk of triggering severe gastric discomfort, nausea, and vomiting.[9]

24. Seizing on that fact, many dietary supplement manufacturers have attempted to develop and market a plethora of different concentrated "extracts" to aid in the consumption and absorption of nitrate derived from beetroots. Supplements are available under many brand names and come in the form of tablets, powders, gels, juices, and soft chews. A simple internet search on Amazon[10] reveals a plethora of supplements, each touting a variety of benefits, flavors, and varying promotional incentives in an attempt to exploit this market.

25. The competition among beetroot supplement manufacturers is understandably fierce, but the ability to deliver results is dubious. To be sure, while manufacturers commonly disclose how much beetroot extract is contained in their supplements, they do not commonly disclose the concentration of nitrate per serving as the Food and Drug Administration ("FDA") only requires the disclosure of dietary supplements' ingredients, weight, and serving size.[11]

26. Regrettably, unscrupulous manufacturers, such as Force Factor, routinely use the paucity of regulations to engage in deceptive advertising. Rather than relying upon the ingredient

---

[8] .*See supra,* fn. 6.
[9] .*Id.*
[10] .https://www.amazon.com/s?k=beetroot+supplements&i=hpc&crid=3V0Q1OCDN8CCP&sprefix=beetroot+supplements%2Chpc%2C64&ref=nb_sb_noss_2
[11] . https://www.fda.gov/food/information-consumers-using-dietary-supplements/questions-and-answers-dietary-supplements#:~:text=The%20Supplement%20Facts%20panel%20must,the%20dietary%20ingredient%20per%20serving.

label as an opportunity to pursue transparency and honest dealings with the average consumer, Focus Factor uses it to obfuscate both the quality of the ingredients used in *Total Beets* soft chews, as well as the concentration of nitrate.

## II. Force Factor Markets its *Total Beets* Soft Chews as Containing Beetroot Extract and Nitrate Sufficient to "Improve Oxygen Delivery" and Boost "Heart-Healthy Energy"

27. Having recently been caught red handed by the Federal Trade Commission ("FTC"), under the corporate cloak of Nutraclick LLC, for participating in a deceptive "negative option" scheme in connection with the sale of beauty products,[12] Force Factor has changed its focus and pitched a new carnival tent under its sports nutrition brand. In or around June 2021, Force Factor threw its hat into the oversaturated ring of beetroot supplements by launching its *Total Beets* line of products.

28. The face behind Force Factor (and its law breaking predecessor, Nutraclick LLC) is its CEO Daniel Wallace, a self-proclaimed "digital media and marketing entrepreneur working in a growing startup in the health and nutrition space."[13] He has been the CEO of Force Factor since 2009, the same year he launched its predecessor, Nutraclick LLC. Since that time, there has scarcely been a supplement that Wallace and Force Factor have not attempted to market, regularly ignoring the boundaries of science and simply deploying the marketing savvy for which he is renown.[14]

29. Having settled on the trending beetroot market, Force Factor aggressively markets its *Total Beets* soft chews as a practical alternative to consuming natural beets in order to ingest efficacious levels of cardioprotective nitrate.

---

[12]. https://www.ftc.gov/legal-library/browse/cases-proceedings/x160052-nutraclick-llc-et-al
[13]. http://www.danielwallace.com/
[14]. https://www.businesswire.com/news/home/20140522006462/en/NutraClick-CEO-Daniel-Wallace-Named-Ernst-Young-Entrepreneur-Of-The-Year-2014-Finalist-in-New-England

30. Force Factor markets and sells the soft chews for their apparent convenience and simplicity, touting the magic ingredient it calls the "Total Beets BP Support Superblend":



### III. Force Factor's Claims that the Total Beets Soft Chews are a "Safe Source of Nitrates," and "Improve Oxygen Delivery" and Boost "Heart-Health Energy" are False and Misleading to Consumers

31. Reasonable consumers purchase the *Total Beets* soft chews with the expectation that they will be able to consume conveniently a dietary supplement that will improve their cardiovascular well-being and performance, and increase their levels of energy. Indeed, the *Total Beets* packaging highlights the claim that consuming just two chews a day on a regular basis will "boost heart healthy energy."

32. However, as Force Factor has itself acknowledged,[15] the effective concentration of nitrate in a dietary supplement that must be consumed by the average person to confer any beneficial effects, be it in terms of energy or cardiovascular well-being, is 700 milligrams.

33. The secret "superblend," only part of which consists of beetroot extract, is sold at a weight of 650 milligrams per serving (or, two chews). To put things in perspective, one would

---

[15].*Windmill Health Products, LLC v. Force Factor LLC, et al.*, 21-CV-18114 (MCA) (JBC) (D.N.J. 2021), ECF Docket No.: 12, Answer and Countercl., at ¶ 26

have to consume approximately 13 grams (13,000 milligrams) of beetroot extract to yield a <u>non-efficacious</u> concentration of 400 milligrams of nitrate (falling 300 milligrams short of the effective clinical range).[16] Even assuming the entirety of the 650 milligrams per serving of the "superblend" consisted of beetroot extract (and, it does not), an entire package of 30 servings (2 candies per serving, per day, or 60 chews) would yield only 19.5 grams of beetroot extract and approximately 600 milligrams of nitrate (still short of the effective clinical range).

34. In other words, even assuming the "superblend" consisted entirely of beetroot extract, consuming the entire bag of *Total Beets* soft chews --- that is, 60 chews --- would still produce no results.

35. The reality, however, is far worse. Laboratory testing has unequivocally demonstrated that one serving, yields approximately 9 milligrams of nitrate (4.33 milligrams per chew). An entire bag, therefore, contains a meager 270 milligrams of nitrate. At this rate, a consumer would have to eat nearly **three entire bags** of soft chews **every day** to reach the effective threshold of nitrate required to see any beneficial effects, assuming that any person would be able to eat that many chews in the first place.

36. Consumers purchasing *Total Beets* soft chews expecting to obtain any kind of benefit at the suggested serving sizes in terms of "improved oxygen delivery" or "heart-healthy energy" are, in actuality, consuming negligible, miniscule doses that, contrary to Force Factor's claims, do absolutely nothing and have no effect on cardiovascular function.

37. Unless a consumer purchases three bags a day and gorges themselves uncontrollably (which defeats the entire point of purchasing a convenient and concentrated source of beetroot extract), there is no benefit to be derived at all.

---

[16]. https://knowledge.ulprospector.com/7381/fbn-sports-nutrition-supplements-formulating-nitrate-salts-vs-beetroot/

38. Force Factor's *Total Beets* soft chews, consumed at the recommended serving size of two soft chews per day, provide a mere 9 milligrams of nitrate. For all intents and purposes, the soft chews confer no benefit whatsoever and amount to nothing more than an expensive pack of flavored candies.

39. Unsurprisingly, consumer reviews of the *Total Beets* soft chews illustrate consumers' upset concerning Defendant's false and misleading marketing:



Leslie C.

★☆☆☆☆ Nor seeing benefits.
Reviewed in the United States on August 31, 2022
Size: 60 Count (Pack of 2) | Verified Purchase

I was really hoping these would help with my blood pressure and sometimes high heart rate, however after taking two a day for a month I have yet to realize any benefits.



Randy S

★☆☆☆☆ No effect what so ever on my blood pressure.
Reviewed in the United States on February 7, 2022
Size: 60 Count (Pack of 1) | Verified Purchase

I am almost done the whole bag, followed the instructions, never missed a day, not a single digit change in my blood pressure which I monitor regularly. Never buying again. Waste of money.



truckdriverD

★☆☆☆☆ Doesn't work didn't feel good at all
Reviewed in the United States on August 25, 2021
Size: 60 Count (Pack of 1) | Verified Purchase

I took one and I didn't feel good very sluggish and I got a headache I didn't feel energy at all . I will be returning these the ingredients list is not to clear either



Nana banana

★☆☆☆☆ **Noticed no difference**
Reviewed in the United States on September 1, 2021
Size: 60 Count (Pack of 1) | Verified Purchase

Been taking these and have noticed no difference in overall health. Still taking blood pressure meds. Still feeling blah.

Cynthia Walker

★☆☆☆☆ **Not worth it**
Reviewed in the United States on January 1, 2022
Size: 60 Count (Pack of 1) | Verified Purchase

Didn't make any difference in my blood pressure & were very chewy &hard to swallow. Also the flavor took some getting used to but those things would have been surmountable if it worked to lower my blood pressure

40. Force Factor's advertising is clearly designed to manipulate consumers into believing that they are purchasing an efficacious dietary supplement that will improve their cardiovascular well-being and that the effectiveness is derived from a patented combination of beetroot nitrates when, in fact, there is little to no beetroot extract in the soft chews, a negligible amount of nitrate, and no health benefits.

IV.   **Plaintiff Purchased the *Total Beets* Soft Chews**

41. Plaintiff purchased the *Total Beets* soft chews in or around August 2022, at a local Walmart in Queensbury, New York.

42. Prior to purchasing *Total Beets* soft chews, Plaintiff was exposed to Force Factor's marketing on television and advertisements on Facebook. In addition, Plaintiff reviewed the product packaging which touts the soft chews as being a "safe source of nitrates" and promises that consuming the chews will "boost heart-healthy energy."

43. Plaintiff purchased the *Total Beets* soft chews believing that they consisted of natural beets, would help him improve his cardiovascular well-being, maintain healthy blood

12

pressure, and boost his energy levels. However, after consuming the soft chews as directed, Plaintiff discovered that they had no effect whatsoever, and did not confer any of the promised benefits.

44.     Had Plaintiff known that the *Total Beets* soft chews contained only trace amounts of real beetroot extract and negligible concentrations of nitrate far below the clinical threshold for efficacy, he would not have purchased them or, at the very least, would not have paid the premium price charged.

## CLASS DEFINITION AND ALLEGATIONS

45.     Plaintiff brings this action on behalf of himself and all other similarly situated consumers in the State of New York pursuant to Rule 23 of the Federal Rules of Civil Procedure, and seeks certification of the following class (the "Class"):

> All consumers who, within the applicable statute of limitations period, purchased in the State of New York (whether online or in-person) a *Total Beets* product (in the form of chews, tablets, gummies, or powder) – manufactured, marketed, distributed, and/or sold by Defendant which Defendant represented as being a "Safe Source of Nitrates," and being able to "Improve Oxygen Delivery," and "Boost Heart-Healthy Energy" (the "Class Product"). Excluded from the class are Defendant, its parents, subsidiaries, affiliates, officers and directors, judicial officers and their immediate family members and associated court staff assigned to this case, and those who purchased the Class Product for resale.

46.     Plaintiff expressly disclaims any intent to seek any recovery in this action for personal injuries that he or any Class member may have suffered.

47.     **Numerosity**.  This action is appropriately suited for a class action.  The members of the Class are so numerous that joinder of all members of the Class is impracticable.  Plaintiff is informed, believes, and thereon alleges, that the proposed Class contains thousands of purchasers

of the Class Product who have been damaged by Defendant's conduct as alleged herein. The precise number of Class members is unknown to Plaintiff.

48. **Existence and Predominance of Common Questions of Law and Fact**. This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

- Whether Defendant's conduct, as alleged herein, constitutes violations of New York General Business Law Section 349.

- Whether Defendant's conduct, as alleged herein, constitutes violations of New York General Business Law Section 350.

- Whether Defendant's labeling, advertising, marketing, and/or selling of the Class Product as a "Safe Source of Nitrates," being able to "Improve Oxygen Delivery," and "Boost Heart-Healthy Energy" was and/or is false, fraudulent, deceptive, and/or misleading.

49. **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class, because, *inter alia*, all Class members have been injured through the uniform misconduct described above and were subject to Defendant's blatant misrepresentation that the Class Product was a "Safe Source of Nitrates," being able to "Improve Oxygen Delivery," and "Boost Heart-Healthy Energy"

50. Moreover, Plaintiff's claims are typical of the Class members' claims. Plaintiff is advancing the same claims and legal theories on behalf of himself and all members of the Class.

51. **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff purchased the Class Product, and he was harmed by Defendant's deceptive misrepresentations. Plaintiff has therefore suffered an injury in fact as a result of Defendant's conduct, as did all Class members who purchased the Class Product. Plaintiff has retained counsel who are adept, sophisticated, and experienced in the field of class action litigation, and have adequate resources to fully and zealously advocate on behalf of the class.

52. **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

53. Plaintiff seeks monetary damages, including statutory damages on behalf of the entire Class, and other equitable relief on grounds generally applicable to the entire Class. Unless a Class is certified, Defendant will be allowed to profit from its deceptive practices, while Plaintiff and the members of the Class will have suffered damages.

## COUNT I
### (Violation of New York General Business Law Section 349)

54. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 51 as if fully set forth herein.

55. New York General Business Law § 349 prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]."

56. By labeling, advertising, marketing, distributing, and/or selling the Class Product to Plaintiff and the other Class members as a "Safe Source of Nitrates," being able to "Improve

15

Oxygen Delivery," and "Boost Heart-Healthy Energy" Defendant engaged in, and continues to engage in, deceptive acts and practices because the Class Product contains a negligible amount of nitrates and, as such, is ineffective.

57. In taking these actions, Defendant failed to disclose material information about its product, which omissions were misleading in a material respect to consumers and resulted in the purchase of the Class Product.

58. Defendant has deceptively labeled, advertised, marketed, promoted, distributed, and sold the Class Product to consumers.

59. Defendant's conduct was consumer oriented.

60. Defendant engaged in the deceptive acts and/or practices while conducting business, trade, and/or commerce and/or furnishing a service in New York.

61. Defendant's false claim that its product is "Safe Source of Nitrates," able to "Improve Oxygen Delivery," and "Boost Heart-Healthy Energy" was and is misleading in a material respect as to whether the Class Product, in fact, contains sufficient concentrations of nitrate to confer any benefits.

62. Based on, among other things, Defendant's knowledge that the Class Product lacks nitrate in a concentration sufficient to confer any benefits, Defendant knew that by making the misrepresentations addressed herein, Plaintiff and other consumers would be misled into purchasing the Class Product and/or paying a premium price for the Class Product.

63. Plaintiff and the Class members have been aggrieved by and have suffered losses as a result of Defendant's violations of Section 349 of the New York General Business Law. By virtue of the foregoing unfair, unconscionable, and deceptive acts in the conduct of trade or commerce, Plaintiff and the members of the Class have been substantially injured by purchasing and/or overpaying for the Class Product which is not what Defendant represents it to be.

64. By reason of the foregoing, Defendant's conduct, as alleged herein, constitutes deceptive acts and practices in violation of Section 349 of the New York General Business Law, and Defendant is liable to Plaintiff and the Class for the actual damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus statutory damages, treble damages, and attorneys' fees and costs.

65. Defendant's conduct, as alleged herein, in violation of Section 349 of the New York General Business Law was engaged in by Defendant willfully and/or knowingly. Accordingly, Plaintiff and members of the Class are entitled to an award of damages above and beyond their actual damages in accordance with Section 349(h) of the New York General Business Law.

**COUNT II**
**(Violation of New York General Business Law Section 350)**

66. Plaintiff realleges and incorporates by reference the allegations in paragraphs 52 through 63 as if fully set forth herein.

67. Defendant's labeling, marketing, and advertising of the Class Product is "misleading in a material respect," as it fails to disclose to consumers material information in Defendant's sole possession and, thus, is "false advertising."

68. No rational individual would purchase the Class Product at the premium price at which it is sold if that individual knew that the Class Product did not contain a concentration of nitrate sufficient to confer any health benefits, which is how Defendant markets the Class Product.

69. Defendant's advertisements and marketing of the Class Product as "Safe Source of Nitrates," being able to "Improve Oxygen Delivery," and "Boost Heart-Healthy Energy" were consumer oriented.

70. Defendant's advertisements and marketing of the Class Product as "Safe Source of Nitrates," being able to "Improve Oxygen Delivery," and "Boost Heart-Healthy Energy" were misleading in a material respect.

71. By virtue of the foregoing unfair, unconscionable, and deceptive acts in the conduct of trade or commerce in New York, Plaintiff and the members of the Class have been substantially injured by overpaying for a product that has diminished value due on account of the false claim that it is a source of beneficial nitrates, improves oxygen delivery, and boosts heart healthy energy.

72. Defendant's conduct, as alleged herein, constitutes false advertising in violation of Section 350 of the New York General Business Law, and Defendant is liable to Plaintiff and the members of the Class for the actual damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, statutory damages, plus treble damages, and attorneys' fees and costs.

73. Defendant continues to violate Section 350 of the New York General Business Law and continues to aggrieve Plaintiff and the members of the Class.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against Defendant as follows:

A. Certifying this action as a class action as soon as practicable, with the Class as defined above, designating Plaintiff as the named Class representative, and designating the undersigned as Class Counsel.

B. On Plaintiff's Count I, awarding against Defendant the damages that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus statutory damages and treble damages.

  C. On Plaintiff's Count II, awarding against Defendant the damages that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus statutory and treble damages.

  D. On Plaintiff's Count I and II, awarding Plaintiff and the Class interest, costs, and attorneys' fees.

  E. Awarding Plaintiff and the Class such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: December 29, 2022
    White Plains, New York

**DENLEA & CARTON LLP**

By: /s/ Steven R. Schoenfeld
  Steven R. Schoenfeld
  James R. Denlea *(Pro Hac Vice to be filed)*
  Jeffrey I. Carton *(Pro Hac Vice to be filed)*
  Stan Sharovskiy *(Pro Hac Vice to be filed)*
  2 Westchester Park Drive, Suite 410
  White Plains, New York 10604
  Tel.: (914) 331-0100
  Fax: (914) 331-0105
  jdenlea@denleacarton.com
  jcarton@denleacarton.com
  sschoenfeld@denleacarton.com

KRAVIT SMITH LLP

Philip M. Smith
75 South Broadway, Suite 400
White Plains, New York 10601
Tel.: (646) 433-8004
Fax: (917) 858-7101
psmith@kravitsmithllp.com